Vanessa R. Waldref
United States Attorney
Eastern District of Washington
George J.C. Jacobs III
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| UNITED STATES OF AMERICA, | 4:21-CR-06042-MKD-1 |
|---|---|
| Plaintiff, | United States Sentencing Memorandum |
| v. | |
| ALI ABED YASER, | |
| Defendant. | |

    Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney, for the Eastern District of Washington, and George J.C. Jacobs III, Assistant United States Attorney for the Eastern District of Washington, submits the following sentencing memorandum.

    The United States recommends that the Court sentence Defendant ALI ABED YASER to a 51-month term of imprisonment, to be followed by a 3-year term of supervised release, and the payment of $126,990.01 in restitution. A custodial sentence is necessary to reflect the seriousness of the crimes he committed and provide adequate deterrence. 18 U.S.C. § 3553(a)(2). Defendant's criminal conduct did not stop with the wire/mail/healthcare fraud scheme. After Defendant became aware of the government's investigation, he engaged in multiple criminal acts in order to avoid accountability for his conduct. Defendant benefitted from his criminal acts.

United States Sentencing Memorandum - 1

He quickly and illegally eliminated approximately $30,018 in car loan debt, received at least $34,501.99 in settlement payments for the one accident he staged with his family members and others, and then purchased the same car from salvage and sold it. Defendant needs to be held accountable for his actions.

I.  **Background and Offense Conduct**

Defendant YASER no longer wanted to make the monthly car payments on his Lexus, so he staged an automobile accident on May 28, 2019, in Pasco, Washington, with his wife (Insaf Karawi), son (Hasanein Yaser), two minor daughters, and at least two other codefendants, Ameer R. Mohammed and Seiffedine Al-Kinani.[1]  His plan involved Ameer R. Mohammed intentionally crashing a vehicle into Defendant's Lexus and everyone filing fraudulent claims with insurance companies claiming wage loss, property damage and bodily injury.  As part of the staging, Defendant made sure no family members were in the Lexus when Ameer R. Mohammed rammed it. Defendant then instructed his family members to seek medical attention from medical providers for non-existent injuries.

When telephonically interviewed by the insurance company, Defendant falsely claimed he injured his neck and back, and he had "the worst impact."  Defendant also told the insurance company that he had to cancel several business orders because he was injured in the accident, and he had to walk using a cane.  Defendant falsely stated his wife, son and two minor daughters sustained injuries to the neck, shoulder and left leg, and all sought medical treatment and physical therapy.  Defendant stated his wife was hurt so badly she sought emergency room medical treatment.  Defendant even retained the services of a law firm to assist in filing fraudulent insurance claims on behalf of his son and two minor children.  As a result, two insurance companies paid out $126,990.01.  Defendant received approximately $34,501.99, which included

---

[1] *See* Exhibit A attached hereto for photographs of Defendant's intentionally damaged Lexus.

United States Sentencing Memorandum - 2

bodily injury settlements of $15,250 and collision coverage. Defendant's two minor children each received $5,000. After the accident, Defendant purchased the Lexus back from salvage and sold it for $5,000.

Defendant thought he was in the clear until May 28, 2020, when FBI executed a warrant to search his residence. Over the ensuing months, Defendant engaged in criminal acts in order to avoid accountability for his conduct. He suspected one of his insurance fraud co-conspirators was working as an FBI informant, so he devised a plan to obstruct official proceedings by falsely accusing that individual and an FBI agent of soliciting a $20,000 bribe to make the case go away. Defendant recruited another individual[2] to secretly record meetings with the suspected informant and provide those recordings to Defendant so he could later tamper with the recordings. Not stopping there, Defendant even solicited someone to lure the suspected informant to a garage and then turn off the security system so Defendant could finish him off. Defendant persistently lied to the FBI and recruited others (e.g., Mohammed Al-Jibory) to lie for him. He held meetings to align stories. He also lied to the Kennewick Police Department.

**Fed.R.Crim.P. 11(c)(1)(C) Plea Agreement and Sentencing Calculations**

On October 7, 2022, Defendant entered pleas of guilty to Counts 69, 94, 126, 127, 128 and 136 of the Indictment pursuant to a written plea agreement. ECF No. 629. These felony charges include mail fraud, conspiracy to commit mail/wire fraud, conspiracy to commit healthcare fraud, conspiracy to obstruct official proceedings, and making false statements to the FBI. Pursuant to Fed.R.Crim.P. 11(c)(1)(C), the parties agreed the appropriate disposition of the case is a is range of 35 months to 51 months imprisonment, to be followed by a three-year term of supervised release. The government agreed to recommend a sentence of 51 months, while Defendant agreed to recommend a sentence of 35 months.

---

[2] Unbeknownst to Defendant, this individual was a confidential human source.

United States Sentencing Memorandum - 3

The parties agreed on the base offense levels for the crimes to which he pleaded guilty. ECF No. 629, ¶ 7a. They agreed on an 8-level increase for fraud loss, a 2-level increase for using a minor to commit a crime, and a 2-lvel increase for obstructing/impeding the administration of justice. ECF No. 629, ¶ ¶ 7b, e, f. The parties had no agreement on aggravating role and official victim increases. ECF No. 629, ¶ 7c, d.

Fed. R. Crim. P. 11(c)(1)(C) permits the parties to "agree that … a sentencing range is the appropriate disposition of the case." The agreement becomes binding on the Court only upon the Court's acceptance of the plea agreement. Although the Sentencing Guidelines remain a starting point for a district court in assessing the reasonableness of an agreement under Fed. R. Crim. P. 11(c)(1)(C), the Sentencing Guidelines remain advisory, and the parties are not limited to them in reaching their agreement that a specific sentence is the appropriate disposition of the case. *See United States v. Pacheco-Navarette*, 432 F.3d 967 (9th Cir. 2005), where this Circuit held that it is a "false premise that stipulated sentences must comport with the Guidelines … We accept the proposition explicitly: as the Guidelines are advisory only … there can be no reasonable argument that the court does not have the authority to accept a stipulated sentence that does not comport with them." 432 F.3d at 970. *See also United States v. Cieslowski*, 410 F.3d 353, 364 (7th Cir. 2005) ("A sentence imposed under a Rule 11(c)(1)(C) plea arises directly from the plea agreement itself, not from the guidelines …. As *Booker* is concerned with sentences arising under the Guidelines, it is inapplicable in this situation."). Justice Sotomayer based her concurring opinion in *Freeman v. United States*, 131 S.Ct. 2685 (2011) on a similar analysis, stating that in sentencing a defendant following the acceptance of a plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C),

> [t]he term of imprisonment imposed by the sentencing judge is dictated by the terms of the agreement entered into by the parties, not the judge's Guidelines calculation. In short, the term of imprisonment imposed pursuant to a (C) agreement is, for purposes of § 3582(c)(2),

United States Sentencing Memorandum - 4

> 'based on' the agreement itself. To hold otherwise would contravene the very purpose of (C) agreements – to bind the district court and low the Government and the defendant to determine what sentence he will receive.

*Id.* at 2696. Despite the fact that the parties may agree to a sentence outside of the advisory Guideline range, it is anticipated that this Court will consider the Guidelines in determining whether to accept the plea agreement. USSG § 6B1.2(c).

In the present case, the parties have agreed that a sentence range of 35 to 51 months incarceration is the appropriate disposition of the case. Under the circumstances of this case, the United States believes that the sentencing range proposed in the plea agreement is a reasonable resolution intended to bring certainty and finality to the proceedings. The proposed period of incarceration is substantial. The proposed sentence appears adequate to deter the Defendant and others similarly situated. It recognizes the seriousness of Defendant's conduct. In light of the compromise represented by Defendant's acceptance of responsibility in this case, the United States believes that the sentencing range is consistent with the goals of 18 U.S.C. § 3553 and asks the Court to accept the terms of the plea agreement entered in this case.

## II.    Sentencing Guidelines

<u>Advisory Guideline Range</u>

According to the PSR, the adjusted offense level for the underlying offense (Counts 69, 94, 126 and 127) is 21. PSR, ¶ 93. The adjusted offense level for the obstruction offense (Counts 128 and 136) is 27. PSR, ¶ 94. Since the calculated adjusted offense level for the obstruction offense is greater than the calculations for the underlying offense, the Probation Office used the obstruction offense calculations. PSR, ¶ 94. After acceptance of responsibility, the PSR calculates Defendant's total offense level is 24. PSR, ¶ 104. Based on criminal history category I, Defendant's advisory guidelines range of imprisonment is 51-63 months. PSR, ¶ 174.

United States Sentencing Memorandum - 5

### III. 18 U.S.C. § 3553 Factors

#### A. The Nature and Circumstances of the Offense

Defendant's crimes were serious, complex and highly orchestrated. Insurance fraud is a serious crime that affects society in the form of higher insurance premiums. Obstructing official proceedings, lying to the FBI, falsely accusing an FBI agent and another individual of soliciting a bribe are serious crimes as well. The goal of his fraud scheme was to generate a profit for himself and others. Here, the seriousness of the offense is magnified because the crime needlessly caused health care providers, emergency personnel and police officers to expend precious resources that otherwise could have been used to assist true victims. Although the scheme targeted an insurance company, it also impacted law enforcement and medical professionals. Police officers responded to the staged crash. When Defendant and his conspirators feigned injury for the staged crash, doctors and nurses had to spend time examining and treating non-existent injuries. The true hallmark of the scheme was bald-faced deception as Defendant and his co-conspirators lied to responding police officers; the doctors and the nurses; and victim insurer. After Defendant became aware of the investigation, he engaged in multiple acts to avoid accountability for his conduct and conspired with others to do so.

Defendant's criminal conduct demonstrates his lack of respect for the law, the police, medical personnel, and the insurance business. It seems he believes that when caught, it is acceptable to lie to law enforcement, meet with others to align stories, and even tamper with potential evidence and witnesses.

#### B. History and Characteristics of Defendant

Defendant was born in Iraq. He became a naturalized U.S. citizen in 2016. He married co-defendant Insaf Karawi in 1999, divorced in 2014, but apparently reconciled in 2015. He has three children, one of whom has a disability. He has a problem with alcohol. He has never participated in substance abuse treatment. At the time of the staged accident, Defendant was 49 years old, and he owned Blackhawk

United States Sentencing Memorandum - 6

Roofing and Construction in Kennewick, Washington. Defendant also previously worked as long-term health care provider for approximately 4 years. Defendant lied to the police officers and insurance company representatives in furtherance of the fraud scheme. In 2018, he assaulted his son.

### C. The Need to Afford Adequate Deterrence

Under Section 3553(a), the need for the sentence to "afford adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a)(2)(B), must also be considered. Here, the Government respectfully submits that a custodial sentence is necessary to serve this purpose. The audacity of Defendant's crimes has understandably captured the attention of both the public, generally, and members of the insurance services industry specifically. Thus, the deterrent message and effect of the sentence imposed by the Court in this case will resonate significantly with any individual tempted to engage in conduct similar to Defendant's.

### D. The Need To Avoid Unwanted Sentence Disparities

Under 18 U.S.C. § 3553(a)(7), the Court should consider the "need to avoid unwarranted sentencing disparities." The Sentencing Guidelines have taken into account the relevant factors and are in and of themselves a means to avoid unwarranted sentencing disparities.

## IV. Discussion

In addition to reflecting the seriousness of the offense, *see* 18 U.S.C. § 3552(a)(2)(A), a sentence of 51-months' imprisonment will also promote respect for the law and deter others from similar offenses, *see id.* § 3553(a)(2)(B). Automobile insurance fraud is difficult to detect. Neither police officers nor insurers ordinarily have the tools or capacity to flag suspicious patterns across multiple crashes involving different parties. Hence, when a fraudster, like Defendant, is prosecuted, it is important to send a strong message that this type of crime will be punished appropriately. "Defendants in white collar [cases] often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with

United States Sentencing Memorandum - 7

serious punishment." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006). It is this type of mentality that is most amenable to deterrence. *See, e.g.*, *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." (internal quotation marks and alteration omitted)); *United States v. Hauptman*, 111 F.3d 48, 52 (7th Cir. 1997) ("[White collar] crime is not as feared as violent crime or drug offenses, but like the latter it requires heavy sentences to deter because it is potentially very lucrative.").

V. <u>Restitution</u>

Restitution is mandatory under 18 U.S.C. § 3663(A) and the Court should order it in the amount of $126,990.01.

VI. <u>Conclusion</u>

Based on the foregoing, and to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and the need to deter others, the United States respectfully recommends that the Court impose a sentence of 51-months imprisonment, to be followed by a three-year term of court supervision.

Dated: January 11, 2023.

Vanessa R. Waldref
United States Attorney

*s/ George J.C. Jacobs III*
George J.C. Jacobs III
Assistant United States Attorney

United States Sentencing Memorandum - 8

**CERTIFICATE OF SERVICE**

I hereby certify that on January 11, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the counsel of record:

*s/ George J.C. Jacobs III*
George J.C. Jacobs III
Assistant United States Attorney

United States Sentencing Memorandum - 9